# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBRA J. MORTON, | : | No. 4:10-cv-596 |
| Plaintiff, | : | Hon. John E. Jones III |
| v. | : | |
| STRYKER MEDICAL, a division of STRYKER CORPORATION, | : | |
| Defendant. | : | |

## **MEMORANDUM & ORDER**

### August 21, 2012

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

This wrongful termination and constructive discharge matter is before the Court on the Report and Recommendation ("R&R") of Magistrate Judge Mildred E. Methvin (doc. 66), filed July 20, 2012, which recommends that we deny the Motion for Summary Judgment (doc. 41) of Defendant Stryker Medical, a division of Stryker Corporation ("Stryker" or "Defendant"). Stryker filed objections to the R&R (doc. 67) and a brief in support thereof (doc. 68) on July 2, 2012. Plaintiff filed a brief in support of the R&R and in opposition to Stryker's objections on August 17, 2012. (Doc. 69). For the reasons detailed herein, we shall adopt Magistrate Judge Methvin's recommended disposition in its entirety.

I.   **STANDARDS OF REVIEW**

  A.   **Review of Magistrate Judge's Report and Recommendation**

When objections are filed to the report of a magistrate judge, the district court makes a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objections are made. 28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 674-75 (1980). The court may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. *Id.* Although the standard of review is *de novo*, 28 U.S.C. § 636(b)(1) permits whatever reliance the district court, in the exercise of sound discretion, chooses to place on a magistrate judge's proposed findings and recommendations. *Raddatz*, 447 U.S. at 674-75; *see also Mathews v. Weber*, 423 U.S. 261, 275 (1976); *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984).

  B.   **Summary Judgment**

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the

non-moving party will bear the burden of proof at trial. *Id.* at 325. Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations of denials in its own pleadings; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the non- moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." *Anderson*, 477 U.S. at 247-48.

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff Debra J. Morton ("Plaintiff"), a licensed registered nurse, was hired by Defendant Stryker Medical ("Stryker"), a medical bed manufacturer, in March of 2009 as a Group Clinical Manager. Plaintiff was to develop the clinical program and manage two clinical specialists. During her employment, Plaintiff was often disappointed in her coworkers performance. In January of 2010, Stephanie Cloney, Stryker's Human Resources Manager, and Sean Daugherty, Stryker's Director of Global Marketing, issued a "documented counseling" memo, noting that Plaintiff's team was experiencing difficulties. Plaintiff was once investigated for comments

---

[1] Magistrate Judge Methvin undertook an exhaustive review of the undisputed facts within her R&R at pages 2 through 7. For the sake of judicial economy, we shall only summarize the most pertinent facts herein, but direct the reader to the R&R for a full factual exposition.

allegedly made regarding coworkers. Despite Cloney's testimony that Plaintiff interfered in that investigation, Plaintiff was not disciplined.

Stryker entered into a contract with Huntsville Hospital ("Huntsville") for the sale of medical beds, and part of the agreement required Stryker to provide Huntsville with a full-time registered nurse to educate Huntsville's nurses about the use of the beds. Stryker hired Jennifer Carter for the position. Carter was to report directly to the Plaintiff. On February 4, 2010, Plaintiff received an email from one of her clinical specialists regarding Carter's licensure and certification status, which she forwarded to Cloney. On either February 4 or February 5, the Alabama State Board of Nursing reported to Stryker that Carter's license had been suspended in 2007 and revoked in 2008. Cloney instructed Carter not to return to Huntsville until resolution of the investigation. Cloney and Plaintiff agreed that Plaintiff would not contact Huntsville until Cloney followed up with Carter.

Cloney thereafter informed Plaintiff that Carter had conceded her lack of valid licensure, and on February 8, 2010, Plaintiff telephoned Karol Jones, chief nursing officer at Huntsville, to alert her that Carter did not possess a valid license. Plaintiff then called Cloney and Daugherty to inform them of the call. Plaintiff advised that she believed that it was her legal and ethical duty to inform Huntsville of Carter's lack of licensure and her misrepresentations. Stryker then suspended

Plaintiff indefinitely for her "interference" with their investigation into Carter's licensure and a prior disciplinary issue. Plaintiff testified that she was suspended because Stryker was upset that she had reported the situation to Huntsville. While suspended, Plaintiff drafted a letter indicating her intent to transition from Stryker. Plaintiff sent the letter to Daugherty and others on February 17, 2010. Plaintiff maintains that the letter did not reflect a final decision to resign and was merely intended to address concerns regarding the situation. In response, Daugherty stated that Plaintiff would be terminated if she did not resign. On February 19, 2010, Stryker emailed Plaintiff, accepting her prior letter as an official resignation.

Plaintiff commenced this action with the filing of a Complaint (doc. 1) on March 17, 2010. The sole count[2] of the Complaint asserts that Stryker unlawfully terminated Plaintiff's employment in violation of public policy. Stryker filed a Motion to Dismiss (doc. 8), which this Court denied by Order (doc. 18) dated July 21, 2010, and thereafter filed its Answer and Affirmative Defenses (doc. 20) on August 12, 2010. Following a period of discovery, Stryker filed the instant Motion for Summary Judgment (doc. 41). The Court issued an Order (doc. 44) referring the Motion to Magistrate Judge Methvin for disposition. On July 20, 2012,

---

[2] The Complaint also asserted a count for violation of the Whistleblower Act. This Count was dismissed by Order (doc. 40) dated September 21, 2011, granting the parties' joint stipulation to dismiss Count II (doc. 39).

Magistrate Judge Methvin issued a Report and Recommendation ("R&R") (doc. 66) recommending that this Court deny the Motion in its entirety, concluding that the record contains sufficient evidence from which a jury could reasonably find that Stryker constructively discharged the Plaintiff in violation of important public policies. (*Id.*). Stryker filed an Objection (doc. 67) to the R&R and a memorandum fo law in support thereof (doc. 68) on August 3, 2012, and on August 17, 2012, Plaintiff filed a responsive memorandum (doc. 69).

## IV. DISCUSSION

As noted hereinabove, Magistrate Judge Methvin concluded that the record contains sufficient evidence to support Plaintiff's claim that Stryker constructively discharged her in retaliation for her report to Huntsville regarding Carter's lack of valid licensure. The Court is of the opinion that Magistrate Judge Methvin's analysis and rationale are sound. Thus, with a mind toward conservation of judicial resources, we will not rehash the Magistrate Judge's detailed analysis but rather briefly address each of the Defendant's objections while incorporating the entirety of Magistrate Judge Methvin's analysis herein.

With respect to the constructive discharge argument, the record reveals that Plaintiff began negotiating her departure with Stryker beginning on February 17, 2010, shortly after she was informed of her indefinite suspension. (Docs. 42, 47 ¶

52). Plaintiff maintains that the letter to Stryker did not represent a resignation on her part, but instead intended to communicate her concerns regarding the allegedly ongoing investigation. She was then advised by Dougherty that she would be terminated if she did not resign from the company. (*Id.* ¶¶ 55; Doc. 52, p. 13-14). Thus, the record sufficiently establishes facts from which a reasonable juror could conclude that the Plaintiff was forced into resignation by Stryker, effecting a constructive discharge. *See Matos v. PNC Financial Servs. Grp.*, 2005 U.S. Dist. LEXIS 24529, *4-5 (D.N.J. Oct. 17, 2005) (Constructive discharge claim exists "where an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the plaintiff employee resigns.").

Magistrate Judge Methvin likewise correctly concluded that the record, viewed in a light most favorable to the Plaintiff establishes that Stryker's conduct falls within the public policy exception to Pennsylvania's general rule of at-will employment. Defendant contends that Judge Methvin erred in concluding that the Plaintiff had an affirmative duty to report Ms. Carter's unlicensed practice in the first place, and that if such an affirmative duty to report does exist, it is not owed to anyone but the relevant licensing authority. (Doc. 68, pp. 6-8). The Plaintiff responds that Pennsylvania law mandated her report to Huntsville. Magistrate Judge Methvin undertook thorough analysis of this issue at pages 13 through 20 of

the R&R, concluding that Pennsylvania law does establish an affirmative duty upon the Plaintiff, and we again agree with her analysis and conclusions.

While "Pennsylvania law presumes that an employee serves at the pleasure of an employer and the relationship may be terminated by either party and at any time," *Rogers v. Int'l Bus. Machines Corp.*, 500 F. Supp. 867, 868 (W.D. Pa. Nov. 13, 1980), an employee may nevertheless "have a cause of action against his employer when the employer exercises his otherwise absolute right to terminate the employment relationship in a manner which contravenes or undermines an important public policy." *Molush v. Orkin Exterminating Co., Inc.*, 547 F. Supp. 54, 56 (E.D. Pa. Aug. 9, 1982). One such exception is triggered where an employee is fired for performing an action that he or she is obligated by law to perform. *See, e.g.*, *Field v. Phila. Elec. Co.*, 565 A.2d 1170 (Pa. Super. Ct. 1989) (for reporting nuclear safety violation); *Reuther v. Fowler & Williams, Inc.*, 386 A.2d 119 (Pa. Super. Ct. 1978) (for reporting for jury service).

Plaintiff asserts that she was fired for compliance with her ethical and legal duties as a registered nurse. To that end, the Pennsylvania Code provides that a registered nurse "may not . . . knowingly permit [an] unlicensed person under the registered nurse's jurisdiction or supervision to misrepresent that the individual is a licensed nurse." 49 PA. CODE § 21.18(b)(3). The Code further provides that a

"registered nurse shall . . . act to safeguard the patient from the incompetent, abusive or illegal practice of any individual." *Id.* § 21.18(a)(3). Thus, in no uncertain terms, the regulations provide that Plaintiff, as a registered nurse acting in a supervisory capacity over others, must not allow an unlicensed person to represent that they are licensed and must act to safeguard hospital patients.[3]

It is undisputed that Ms. Carter was under Plaintiff's supervision. (Doc. 42, ¶ 15). The record establishes that on February 4, 2010, Cloney discovered that Ms. Carter had been misrepresenting her licensure status. (*Id.* ¶¶ 35-39). The record further establishes that Stryker did not inform Huntsville that Ms. Carter had been practicing without a license until Plaintiff telephoned Huntsville's chief nursing officer on February 8, 2010 to inform them of Ms. Carter's actions and the reason for Ms. Carter's removal from Huntsville. (*Id.* ¶ 40, 42-47). Construing the facts of record in a light most favorable to the Plaintiff, the record contains sufficient

---

[3] Stryker contends that Magistrate Judge Methvin inappropriately deferred a question of law to the jury by stating that "[t]here is sufficient evidence to allow a fact-finder to conclude that Morton had an affirmative duty to report Carter's lack of licensure and misrepresentation as well as an obligation to guard patient safety by informing the hospital of the issue." (Doc. 66, p. 19). To the extent this language seeks to place an inquiry into the existence of an affirmative duty with the jury, we reject it and agree with Stryker that such a question of law is for the Court, and not the jury, to decide. However, in this Court's view, the language of the R&R concludes–and we agree–that the regulations explicitly create affirmative duties by which the Plaintiff was required to abide. (*Id.* p. 18 ("Morton has identified a clear administrative regulation that implicates her duty and responsibility as a[n] RN to report Carter, who was under [her] supervision and was not licensed as she had represented."). Thus, the query to be put to the jury is not whether such a duty existed but instead whether the Plaintiff's actions were taken in compliance with and in fulfillment of these established legal and ethical duties.

evidence from which a reasonable jury could find that Plaintiff reported Ms. Carter's licensure status to Huntsville in order to prohibit an unlicensed person from representing herself as a licensed nurse and to protect the safety of the patients at Huntsville.

Finally, Magistrate Judge Methvin concluded that Plaintiff has presented sufficient evidence from which a reasonable trier of fact could conclude that Stryker's purported rationale for threatening termination–a prior incident involving comments about employees and her "interference" with this and another investigation–were merely pretext. Judge Methvin noted that a jury could reasonably discredit Stryker's defense given the temporal proximity of the report to Huntsville and Plaintiff's termination and the overall sequence of events leading to her termination. We agree that, in light of the chain of events, a jury could reasonably question Stryker's purported reasoning for threatening the Plaintiff with termination. Accordingly, we will adopt Magistrate Judge Methvin's analysis with respect to this issue.

## V. CONCLUSION

Based on all of the foregoing, we shall adopt Magistrate Judge Methvin's Report and Recommendation (doc. 66) in its entirety and deny the Defendant's Motion for Summary Judgment (doc. 41).

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Report and Recommendation ("R&R") of Magistrate Judge Methvin (doc. 66) is **ADOPTED** in its entirety.

2. The Defendant's Motion for Summary Judgment (doc. 41) is **DENIED**.

3. The parties **SHALL FILE** a stipulation identifying new case management deadlines in accordance with the Court's calendar, as attached hereto, within twenty (20) days of today's date.

    /s John E. Jones III
John E. Jones III
United States District Judge

**Judge Jones**

## 2012 Court Calendar

| Trial List | Discovery Cut-off | Dispositive Motions Cut-off | Final Pre-Trial Conferences | Jury Selection |
|---|---|---|---|---|
| January | ~~7/29/11~~ | ~~9/1/11~~ | ~~12/1/11~~ | ~~1/4/12~~ |
| February | ~~8/31/11~~ | ~~10/3/11~~ | ~~1/3/12~~ | ~~2/2/12~~ |
| March | ~~9/30/11~~ | ~~11/1/11~~ | ~~2/1/12~~ | ~~3/2/12~~ |
| April | ~~10/31/11~~ | ~~12/1/11~~ | ~~3/1/12~~ | ~~4/3/12~~ |
| May | ~~11/30/11~~ | ~~1/2/12~~ | ~~4/2/12~~ | ~~5/2/12~~ |
| June | ~~12/30/11~~ | ~~2/1/12~~ | ~~5/1/12~~ | ~~6/4/12~~ |
| July | ~~1/31/12~~ | ~~3/1/12~~ | ~~6/1/12~~ | ~~7/5/12~~ |
| August | ~~2/29/12~~ | ~~4/2/12~~ | ~~7/2/12~~ | ~~8/2/12~~ |
| September | ~~3/30/12~~ | ~~5/1/12~~ | ~~8/1/12~~ | ~~9/5/12~~ |
| October | ~~4/30/12~~ | ~~6/1/12~~ | ~~9/4/12~~ | ~~10/2/12~~ |
| November | ~~5/31/12~~ | ~~7/2/12~~ | 10/1/12 | 11/2/12 |
| December | ~~6/29/12~~ | ~~8/1/12~~ | 11/1/12 | 12/5/12 |

**Judge Jones**
**2013 Court Calendar**

| Trial List | Discovery Cut-off | Dispositive Motions Cut-off | Final Pre-Trial Conferences | Jury Selection |
|---|---|---|---|---|
| January | 7/30/12 | 9/3/12 | 12/3/12 | 1/3/13 |
| February | 8/31/12 | 10/1/12 | 1/2/13 | 2/4/13 |
| March | 9/28/12 | 11/1/12 | 2/1/13 | 3/4/13 |
| April | 10/31/12 | 12/3/12 | 3/1/13 | 4/2/13 |
| May | 11/30/12 | 1/1/13 | 4/1/13 | 5/2/13 |
| June | 12/31/12 | 2/1/13 | 5/1/13 | 6/4/13 |
| July | 1/31/13 | 3/1/13 | 6/3/13 | 7/2/13 |
| August | 2/28/13 | 4/1/13 | 7/1/13 | 8/2/13 |
| September | 3/29/13 | 5/1/13 | 8/1/13 | 9/4/13 |
| October | 4/30/13 | 6/3/13 | 9/3/13 | 10/2/13 |
| November | 5/31/13 | 7/1/13 | 10/1/13 | 11/4/13 |
| December | 6/28/13 | 8/1/13 | 11/1/13 | 12/3/13 |